John G. Brunner, Mary E. Brunner, His Wife, and Sidney T. Yates, Appellants, v. The Zoning Hearing Board of Upper Makefield Township, Appellee.

Argued October 3, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*John Philip Diefenderfer*, with him *Stuckert, Yates & Krewson*, for appellants.

*John D. Trainer,* with him *Power, Bowen and Valimont,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 7, 1974:

Appellee Monk stirred up the individual Appellants when he induced the Zoning Board of Upper Makefield Township (Board) to grant him a special exception to operate a private heliport on 5.7 acres of vacant ground which had been specifically leased for that purpose.

Appellee's first application for a special exception under Section 613 of the Upper Makefield Zoning Ordinance to locate a heliport on his own land in August of 1971 was rejected by the Board because his property consisted of 3.5 acres, and could not meet the State minimal requirement of 500 foot helicopter approaches without encroaching upon the airspace of adjacent properties. Monk then leased, subject to zoning approval, a 200 by 200 feet landing area directly across the road from his property, and in addition, the right to fly over the remainder of the lessor's 60 acre farm. In considering Appellee's reapplication for a special exception, the Board conducted two hearings in November and December of 1971 which resulted in extensive testimony relative to the noise level of the proposed heliport and its effect upon the property values in the Residential-Agriculture district in which this property is located. In its decision dated January 29, 1972, the Board granted the special exception, concluding that the heliport would be compatible with adjacent residential uses upon the condition that (1) the heliport be limited to one privately owned helicopter of less than 200 horsepower, and (2) that its landing pad be set back at least 500 feet from the nearest public road or property line. The Board and Monk's position was sustained by the Court of Common Pleas of Bucks County. Appellants now come to us for relief.

Where the court below has taken no additional evidence, our scope of review in a zoning case is limited to a determination of whether or not the zoning hearing board committed an abuse of discretion or an error of law. *Clawson v. Harborcreek Zoning Hearing Board,* 9 Pa. Commonwealth Ct. 124, 304 A. 2d 184 (1973); *The Boulevard Land Corporation v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 584, 303 A. 2d 234 (1973). Our review of the record, which we find supports the findings of fact of the Board, reveals neither an error of law nor an abuse of discretion, and so we affirm.

Appellant's initial contention is that the Board and Court of Common Pleas committed an error of law in its construction of Section 613 of the Ordinance as authorizing an airfield use by special exception. A close reading of Section 613 convinces us that this argument is without merit. It provides:

*"Airfields*

"1. No airplane landing field of any class shall be constructed, laid out, or maintained in the said Township, except by express authority of and after hearing had by the Zoning Hearing Board, said Zoning Hearing Board first giving notice to adjoining property owners, which must be by public notice published once a week for three weeks in a newspaper circulating generally in said Township."

It is evident that Section 613 functionally, if not expressly, creates an "airfield" use as a special exception throughout Upper Makefield Township. "A special exception is not an 'exception' to a zoning ordinance. It is a permitted use which an applicant is entitled to have, unless the Board determines, according to the standards in the zoning ordinance, that the use would adversely affect the community." *Berlant v. Zoning Hearing Board of Lower Merion Township,* 2 Pa. Commonwealth Ct. 583, 586, 279 A. 2d 400, 401 (1971);

*Jones v. Zoning Hearing Board and The Tennis Club,*
7 Pa. Commonwealth Ct. 284, 298 A. 2d 664 (1972). Although Section 613 does not specifically define the use as a "special exception," exact terminology is hardly determinative because the language of the provision evidences an intention by its draftsmen that it be treated as a special exception. *Phi Lambda Theta Zoning Case,* 400 Pa. 60, 161 A. 2d 144 (1960); *Root v. Erie Zoning Board of Appeals,* 180 Pa. Superior Ct. 38, 118 A. 2d 297 (1955).

We are next asked to declare Section 613 void because it does not establish sufficient standards to guide the Board in its consideration of the merits of applications for special exceptions for airfields throughout the township. This, Appellants urge, constitutes an improper delegation of legislative power. In considering the Ordinance as a whole, however, we find that there are sufficient standards to guide and control, if need be, the Board's discretion in considering applications for special exceptions under Section 613. Section 101 of the Ordinance provides: "Section 101. Interpretation. *In interpreting and applying the provisions of this Ordinance, they shall be held to be the minimum requirements for the promotion of the public health, safety, comfort, convenience and general welfare.* Where provisions of this Ordinance impose greater restrictions than those of any statute, other ordinances, or regulation, the provisions of this Ordinance shall be controlling. Where the provisions of any statute, other ordinance or regulation impose greater restrictions than this Ordinance, the provisions of such statute, other ordinance or regulation shall be controlling." (Emphasis added.) Identical language to that emphasized above was held to constitute a sufficient standard by our Supreme Court in *Archbishop O'Hara's Appeal,* 389 Pa. 35, 121 A. 2d 587 (1957) and would alone be an adequate check on the Board's powers.

The instant Ordinance, moreover, goes beyond the standards approved in *Archbishop O'Hara's Appeal, supra,* Section 100 provides: "Purposes. This Ordinance is enacted for the following purposes: To promote the health, safety, morals and general welfare of the inhabitants of Upper Makefield Township by lessening congestion in the roads and streets; securing safety from fire, panic and other dangers; providing adequate light and air; preventing the overcrowding of land, avoiding undue concentration of population; facilitating the adequate provisions of transportation, water, sewage, schools, parks and other public requirements giving consideration to the character of the district and its particular suitability for particular uses; conserving the value of buildings; and encouraging the most appropriate use of land pursuant to the comprehensive plan of the Township." This section is substantially similar to the preamble approved in *Good Fellowship Ambulance Club's Appeal,* 406 Pa. 465, 469, 178 A. 2d 578 (1962), where the Court stated: "It would appear from a reading of this section that the learned court below was unnecessarily concerned lest the Board might have no lantern to guide its deliberations in granting or refusing exceptions and therefore could get lost in the swamps of indecision and ambiguity. The lantern, however, is there shining with exceptional brightness. Health, safety, morals, general welfare, lessening of congestion, facilitation of transportation, water, and education are some of the beams of this light of direction." We find this language equally applicable to Section 100 which, when read with Section 101, establishes adequate safeguards to control the Board's discretion in granting or denying special exceptions under Section 613.

Appellants would have us distinguish *Archbishop O'Hara's Appeal, supra,* and *Good Fellowship Ambulance Club's Appeal, supra,* by contrasting the nature of the uses allowed by special exception there ("educa-

tional" and "philanthropic," respectively) with the potentially more dangerous and noxious nature of Section 613's "airfield" use. In addition to the burdensome task of determining specialized standards in technical special exception uses by unskilled volunteer members of local zoning boards (which objection, it is conceded could be overcome by expenditure of great sums of money and time), Appellants would have us overlook the specific provisions of Section 101 which require compliance with the terms of a more restrictive statute, in the instant case the Pennsylvania Aeronautical Code (Act of May 25, 1933, P. L. 1001, as amended, 2 P.S. §1460) in respect to the prerequisites to approval of a heliport by the Bureau of Aviation. These standards are incorporated by reference in the Ordinance, and the conditions imposed by the Board make it clear to us that the Board adhered to the Code in every detail before it granted the special exception.

Assuming all this to be so, the remaining question for us to determine is whether Appellee has brought himself within the use permitted by special exception under Section 613. As this Court said in *Jones v. Zoning Hearing Board and The Tennis Club*, 7 Pa. Commonwealth Ct. 284, 287, 298 A. 2d 664, 666 (1972): "When one applies for a special exception, he need not affirmatively prove that the proposed use would not adversely affect the health, safety and morals of the community; he need only establish by competent and sufficient evidence that the proposed use falls within the ordinance provisions for special exceptions." *See also Lindenwood Corporation v. Township of Upper Darby*, 6 Pa. Commonwealth Ct. 558, 297 A. 2d 547 (1972); *Mignatti Construction Company, Inc.'s Zoning Application*, 3 Pa. Commonwealth Ct. 242, 281 A. 2d 355 (1971).

Appellants contend that the proposed heliport is not the "airfields" or "airplane landing field" use permitted

by Section 613. Since neither term is defined by the Ordinance, each must be interpreted and applied according to its common and approved usage. Statutory Construction Act of 1972, Act of December 6, 1972, P. L. (Act No. 290), 1 Pa.S. §1903. An "airfield" is defined by *Webster's Third New International Dictionary* (1966) as "the landing field of an airport." An "airport" is "a tract of land or water that is adapted and maintained for the landing and takeoff of aircraft."[1] "Aircraft," in turn, is "a weight-carrying machine or structure for flight in or navigation of the air and designed to be supported by the air either by the buoyancy of the structure or by the dynamic action of air against its surfaces—used of airplanes, balloons, or helicopters."[2] "Airplane," on the other hand, is defined by this same source as "a fixed-wing aircraft heavier than air that is driven by a screw propellor or by a high velocity jet and supported by the dynamic reaction of the air against its wings."

Without getting into a semantic dogfight over these commonly used terms, we find that either "airfields" or "airplane landing field" is broad enough to encompass the heliport use proposed by Appellee. Appellants would have us limit the scope of uses permitted by Section 613 to landing fields for fixed-wing aircraft by emphasizing the term "airplane." This contention loses much of its force, however, when "of any class" is read to modify "airplane landing field." This is particular-

---

[1] The Aeronautical Code [2 P.S. §1461(f)(h)] and the Airport Zoning Act [Act of April 17, 1945, P. L. 237, §2, 2 P.S. §1551 (1)] contain substantially similar definitions of "airport," and hence are not set out in full.

[2] The Aeronautical Code [2 P.S. §1461(b)] generally defines an "aircraft" as "(a)ny contrivance, now known or hereafter invented, used or designed for navigation of, or flight in, the air, except a parachute or other contrivance designed for such navigation but used primarily as safety equipment."

ly pertinent since the terms "aircraft" and "airplane" are commonly used interchangeably. The introduction of new, sophisticated concepts in Aeronautical Engineering in the development of vertical take-off and landing machines, semi-fixed wings, partially fixed and folding wings, jet propelled helicopters, all developed by the genius of Sikorsky, Piasecki and others gives credence to the anticipatory language in the ordinance "of any class." Such phraseology clearly evidences an intent that the Board be given broad discretion in determining the aviation uses authorized under Section 613, and is consistent with the canon of construction, appropriate when interpreting a zoning ordinance, that all uses permitted by an ordinance be given their broadest meaning. *Lower Providence Township and Wood v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971); *Burgoon v. Zoning Hearing Board of Charlestown Twp.,* 2 Pa. Commonwealth Ct. 238, 277 A. 2d 837 (1971). "When the term [airfield or airplane landing field] defines uses which are permitted, it is both permissive and restrictive. Without further limiting definition, the permissive nature of the phrase must be taken in its *'broadest sense'.* Gilden [*Appeal,* 406 Pa. 484, 178 A. 2d 562 (1962)]. On the other hand, any restrictive nature ascribed to the phrase must be taken in its strictest sense.[3] Rolling Green [*Golf Club Case,* 374 Pa. 450, 97 A. 2d 523 (1953)]. This accords the landowner the benefit of the least restricted use and enjoyment of his land." *Burgoon v. Zoning Hearing Board of Charlestown Twp.,* 2 Pa. Commonwealth Ct. at 248, 277 A. 2d at 843. (Emphasis in original, foot-

---

[3] For an application of this rule of strict construction specifically to a helicopter or heliport use, *see Thomson Industries, Inc. v. Incorporated Village of Port Washington North,* 27 N.Y. 2d 537, 313 N.Y.S. 2d 117, 261 N.E. 2d 260 (1970) wherein the New York Court of Appeals held that a personal use heliport did not come within the local zoning ordinance's prohibition of heliports.

note added.) In the atmosphere of the foregoing we cannot say that the Board abused its discretion in finding the proposed heliport within the uses permitted by Section 613.

Order affirmed.