The Crary Home and C. J. Crary, et ux., Appellants, *v.* Joseph DeFrees, et al., Appellees.

Argued November 8, 1974, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*David McNeil Olds*, with him *Johanna G. O'Loughlin, Reed, Smith, Shaw & McClay* and, of counsel, *Donald S. Mervine* and *Mervine & Calderwood*, for appellants.

*William A. Bevevino*, with him *Swanson, Bevevino and Millin, P. C.*, for appellees.

OPINION BY JUDGE KRAMER, December 17, 1974:

This is an appeal from an order of the Court of Common Pleas of Warren County, dated November 30, 1973, which reversed a decision of the Zoning Hearing Board of Warren Borough (Board), dated August 28, 1973. The Board's decision had granted a special exception to Mr. and Mrs. C. J. Crary and the Crary Home (Crary), over the objections of certain residents of the Borough of Warren (objectors).

Crary had applied for a special exception to permit the construction of several structures in a residential section of Warren. The land in question is located in an "R-1 Single Family Residence District." The application indicates that Crary intended to establish and maintain a home for "indigent gentlemen and gentlewomen of advanced years, residents of Warren County, with preference given to worthy, needy members of the Methodist Church."[1] The application further says that "[l]iving accommodations will be furnished in apartment units, as shown on plans submitted herewith." The plans submitted with the application show a fairly ex-

---

[1] It should be noted that although the application mentions needy members of a specific church, in fact it was an application by private citizens and not by a church or a church-related organization.

tensive overall development, covering 61,400 square feet with five structures, including a garage, a combined barn and greenhouse, a "studio," a conventional single family dwelling (the residence of Mr. and Mrs. Crary), and the proposed "home" itself. Some of these structures are already in existence and apparently only the construction of the "home" is in issue. The home, as proposed by Crary, would contain eight single occupancy units (each with bath and kitchen facilities) and two double occupancy units. All units would share a large common living room. Testimony in the record indicated, and the Board found, that the Crarys contemplated eventually expanding the home to make use of the entire lot, including their family residence.

After hearing, the Board granted Crary the requested special exception, with one member dissenting and writing a minority opinion. The objectors appealed to the Court of Common Pleas of Warren County, which reversed the Board. Crary appealed to this Court.

The lower court heard no additional evidence, and, in such cases, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Brunner v. Zoning Hearing Board of Upper Makefield Township,* 12 Pa. Commonwealth Ct. 109, 112, 315 A. 2d 359, 360-61 (1974); *Clawson v. Harborcreek Zoning Hearing Board,* 9 Pa. Commonwealth Ct. 124, 127, 304 A. 2d 184, 186 (1973). Both parties seem to agree that there is no issue regarding the exercise of discretion by the Board, and our review is invoked only to determine whether legal error was committed.

The crux of this case involves the construction of the Borough zoning ordinance. Section 802.3 of the ordinance provides, in relevant part, as follows: *"Special Exceptions.* The Board of Adjustment shall grant or refuse special permits under the following conditions: Only those applications for special exceptions shall be

heard and, acted upon which are specifically authorized by the terms of this Ordinance."

The Crary application was based on a claim of "public" or "semi-public" use under Section 202.1 of the ordinance (the section establishing R-1 Single Family Residence Districts), the pertinent part of which reads as follows: *"Uses by Special Exception.* The following uses shall be permitted as a special exception [in an R-1 District] where authorized by the Board of Adjustment subject to Article 800 of this Ordinance: Churches or similar places of worship and related functions; municipal building; public schools; parochial schools; private schools; the taking of not more than two (2) nontransient roomer [sic] providing no sign is displayed; home occupations; and, all other public and semi-public uses." Crary argued that its proposed home constituted a "public" or "semi-public" use under Section 202.1 and was therefore entitled to a special exception. Two members of the Board agreed with a "semi-public" characterization; one member did not agree. The lower court found the proposed use to be "private," as a matter of law, and, on this basis, reversed the Board. For the reasons stated hereinafter, we agree with the lower court and affirm its order.

Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in a zoning ordinance is a question of law and subject to review on that basis. *Merry v. Zoning Board of Adjustment,* 406 Pa. 393, 178 A. 2d 595 (1962); *aff'g.,* 26 Pa. D. & C. 2d 280 (1961); *Swift v. Zoning Hearing Board of Abington Township,* Pa. Commonwealth Ct. , 329 A. 2d 874 (1974). The issue becomes one of statutory construction, and the function of a reviewing court is to determine the intent of the legislative body which enacted the legislation. *Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 341,

346, 285 A. 2d 538, 542 (1972). *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1921. More specifically, the question in the instant case is whether or not the Borough Council, in enacting Section 202.1, intended to permit a use such as that proposed by Crary in a district where single family detached dwellings are the rule.

A statute (or ordinance) should, when possible, be construed to give effect to all of its provisions, *Bethel Township Veterans Home Association Liquor License Case*, 180 Pa. Superior Ct. 159, 165, 119 A. 2d 613, 616 (1956), and a particular section of a piece of legislation should (absent legislative direction to the contrary) be construed as an integral part of the whole, and not as a separate portion with an independent meaning. *Commonwealth of Pennsylvania Water and Power Resources Board v. Green Spring Company*, 394 Pa. 1, 6, 145 A. 2d 178, 181 (1958); *Olson v. Kucenic*, 389 Pa. 506, 509-10, 133 A. 2d 596, 598 (1957). *See* Statutory Construction Act of 1972, 1 Pa. S. §1922(2).

Mindful of these principles, we note, as did the court below and the minority member of the Board, that Section 203.1 of the ordinance in question reads, in relevant part: *"Uses by Special Exception.* The following uses shall be permitted as a special exception when authorized by the Board of Adjustment subject to Article 800 of this Ordinance: *Apartments; converted apartments;* single-family attached dwellings; *rooming houses or tourist homes; philanthropic institutions;* hospitals; public schools; private schools; parochial schools; *nursing or convalescent homes; and other public or semi-public uses,* including cemeteries and institutions of higher education and related facilities." (Emphasis added.) Section 203 establishes "R-2 Low Density Residence Districts," which are, with the exception of the R-1 districts established by Section 202, the most restrictive districts in the Borough's zoning scheme. Even a cursory reading of Section 203.1 permits us to con-

clude that the proposed home would easily fall within at least one of the specifically listed exceptions, emphasized above. The provisions for special exceptions in Section 203.1 militate strongly in favor of a conclusion that the Borough Council, in enacting the ordinance, has specifically decided to allow homes such as the Crary proposal in R-2 districts, but not in R-1 districts. The listing of uses eligible for special exceptions in Section 203.1 indicates that the Council was cognizant of uses identical with, or very similar to, that proposed by Crary, at the time it approved the ordinance. Such a conclusion is supported by the following statement from Ryan, *Pennsylvania Zoning Law and Practice*, §4.21: "If a given use is not listed as permitted in one zoning classification but is permitted in a lower classification by specific reference, it is a fair inference that the use was considered and intentionally excluded from the higher zone. In these circumstances, the courts normally will not read any more general grouping which may be permitted in the higher district as including the lower use." In the same section Ryan also notes, as a general principle, that the structure of the zoning ordinance itself provides the best guide to its interpretation.

In *Bonasi v. Haverford Township Board of Adjustment*, 382 Pa. 307, 115 A. 2d 225 (1955), our Supreme Court dealt with a construction problem similar to that found in the instant case. In *Bonasi* the municipality's ordinance, by specific reference, permitted beauty shops in "H" business districts. The property owner attempted to secure permission to operate such a shop in a "B" residential district, in which the ordinance permitted "professional offices." The Court said: "A reading of the Zoning Ordinance makes it crystal clear that the term 'professional office,' *as used in the enactment in relation to 'B' Residence Districts,* was not intended to include a *beauty shop*. The Ordinance, in Article XII, H Business Districts, section 1201(4), provides for 'Per-

sonal service shop, tailor, barber, *beauty*, shoe repair, dress making shop and other personal service shop **or** store.' (Italics supplied) Since the use of a beauty shop, described *inter alia* as a 'personal service shop,' is specifically permitted as a *business use*, it is inconceivable that a similar use was intended as an accessory professional use in a 'B' Residence District. It is plain that the Ordinance did not so intend." 382 Pa. at 310-11, 115 A. 2d at 226. (Emphasis in original.)

Considering *Bonasi*, the statement quoted above from Ryan, and our own review of the ordinance in question, it seems clear that the Council's use of the term "semi-public uses" in Section 202.1 was not intended to include uses which are specifically permitted as special exceptions in the less restrictive R-2 districts. Were we to hold otherwise, the distinction which was obviously intended between R-1 and R-2 districts would be considerably weakened and the planning scheme of the municipality seriously impaired. Accordingly, the order of the Court of Common Pleas of Warren County, dated November 30, 1973, is affirmed.