CLOUT, INC.

v.

**CLINTON COUNTY ZONING HEARING BOARD,**

**HEJ Partnership, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1994.
Decided March 31, 1995.

John A. Gummo, for appellant.

David K. Irwin, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

HEJ Partnership (appellant) appeals from an order of the Court of Common Pleas of Clinton County (trial court) reversing a decision of the Clinton County Zoning Hearing Board (ZHB) which had granted appellant a special exception allowing for the construc-

tion and operation of a composting facility. We affirm.

Appellant owns 1,700 acres of land in Gallagher Township, Clinton County, Pennsylvania. This property is zoned in an "Agricultural District" pursuant to the Clinton County Zoning Ordinance (ordinance), which does not include the terms "composting" or "compost facility". On February 1, 1993, appellant requested a zoning officer to render a preliminary opinion regarding use of the property as a composting facility. On February 10, 1993, Zoning Officer Timothy Holladay issued a preliminary opinion indicating that a composting facility would be neither a permitted use under Section 501.1 of the ordinance,[1] nor a permissible special exception pursuant to Section 501.2 of the ordinance.[2] Appellant filed a timely appeal to the ZHB.

Hearings before the ZHB were conducted from May through July of 1993, and appellant's proposal was actively opposed by a group known as Citizens and Landowners Outraged United Together (CLOUT). Both parties presented evidence before the ZHB, with appellant's experts testifying extensively on the agricultural nature of composting.

On July 15, 1993, the ZHB issued a written decision in which all three members found that composting was not a permitted agricultural use of the land under Section 501.1 of the ordinance. However, two ZHB members found composting to be allowable under the special exception provisions of Section 501.2 of the ordinance. By a vote of two to one, appellant's use was permitted under this section, with one member concluding that composting was akin to "Sawmills" (§ 501.2(5)), and the other concluding that a compost facility was similar to the natural resource uses specified under Section 501.2(13).[3]

1. Section 501.1 of the Ordinance lists the permitted uses within an agricultural district.

2. Section 501.2 of the Ordinance lists the special exceptions allowed within an agricultural district.
Noteworthy is Mr. Holladay's conclusion that a composting facility would be a permitted use within the industrial districts of the County. (R.R. 290a).

3. Section 501.2(13) of the Ordinance reads as follows:

> Natural resource uses such as: excavating, quarrying, mining, and the processing of topsoil, sand, gravel, clay, shale or other natural formation.

CLOUT appealed to the trial court on August 13, 1993, challenging the ZHB's conclusion that appellant's proposed use of the land as a compost facility fit within special exceptions to the Agricultural District as defined by Section 501.2 of the Ordinance.[4] Without taking any additional evidence, the trial court reversed the decision of the ZHB on April 19, 1994, and denied appellant's petition to post bond. The trial court held that the ZHB had abused its discretion because there was a lack of substantial evidence to support its findings that composting was similar to a sawmill or a natural resource use of the land as specified by Section 501.2 of the ordinance. Appellant now appeals to this Court.[5]

Appellant's primary argument is that the ZHB erred when it found that composting was not a permitted use within the "Agricultural District" under Section 501.1 of the ordinance.

CLOUT claims this issue was waived because the appellant, HEJ Partnership, did not appeal the adverse finding of the ZHB on this issue to the trial court. But the landowner had won on the special exception issue, before the ZHB, and there was nothing from which it could appeal. *Township of Falls Appeal*, 48 Pa.Commonwealth Ct. 392, 410 A.2d 93 (1980). In commenting on the *Township of Falls* case, Ryan says, Pennsylvania Zoning, § 9.5.11, "[s]ince the landowner won on remand, there was nothing from which he could appeal. The law generally permits a correct result to be sustained on an alternative ground, and this decision falls within that doctrine." We also conclude the issue was not waived in this case.

The first issue is whether composting, as described in this case, is a permitted use.

As described by the landowner, and its witnesses, its proposed compost production facility will house twelve "composting" bays, each of which are six feet wide, six feet deep and of unknown length. It will be totally enclosed and nothing to do with the process will be conducted outdoors or will come in direct contact with land or soil. About 120 tons of materials to be used in the compost production will be hauled in by truck on a daily basis. The materials to be trucked in will be leaves, yard waste, Christmas trees, brush, pallets, "commercial organics" (food processing wastes), "municipal bio-solids" (treated human sewage sludge), chicken manure, apple pumice and canning industry waste. All of the materials to be used to produce the compost will be brought in from off site and all of the manufactured product will be shipped off site for use elsewhere. The production process is described by the appellant as a high technology in vessel system, and the proposed facility as a "compost production factory" in an "environmental industry". The proposed compost production system is patented and the production of the compost will be licensed and defined by the Pennsylvania Department of Environmental Resources as a "Municipal Waste Facility."

The appellant argues that its proposed compost facility is an agricultural use related to the tilling of the land and its plant is a structure necessary to the proper operation of agricultural activities, permitted uses in an agricultural district by the terms of the applicable Clinton County zoning ordinance.

Section 501.1 Permitted Uses, says this:
1. Agricultural uses related to the tilling of the land, the raising of farm products, the raising and keeping of horses, cattle and other livestock, and the raising of poultry products.

---

4. CLOUT filed an amended notice of appeal on September 17, 1993, and then requested a stay of all development of the property until the appeal was concluded. Following the trial court's granting of the stay on January 24, 1994, appellant filed a petition requesting CLOUT to post bond.

5. Where, as here, the trial court received no additional evidence before reviewing the findings of the ZHB, our scope of review is limited to a determination of whether the ZHB committed a manifest abuse of discretion or error law. *R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Board*, 157 Pa.Commonwealth Ct. 630, 630 A.2d 937 (1993). The ZHB abuses its discretion when its findings are not supported by substantial evidence. *Hudachek v. Zoning Hearing Board of Newtown Borough*, 147 Pa.Commonwealth Ct. 566, 608 A.2d 652 (1992). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

. . . .

5. Sale of farm products

6. Structures

. . . .

c. Barns, silos, corncribs, poultry houses, and other similar structures necessary to the proper operation of agricultural activities.

The members of the ZHB unanimously agreed that the use was not a permitted use. They differed as to whether the compost facility qualified as a special exception. The trial court discussed the permitted use issue briefly but pointed out that one of appellant's witnesses acknowledged that the composting process did not automatically come within the definition of an agricultural ordinance but contended that the interpretation depended on a case by case analysis. The trial court decided in this case the facility did not qualify as a special exception.

"Compost" is defined as "a mixture that consists largely of decayed organic matter and is used for fertilizing and conditioning land." Webster's New Collegiate Dictionary 231 (1981).

The appellant argues that making compost is an agricultural activity and, thus, a permitted use under a broad interpretation of the Clinton County ordinance, which does not specifically refer to "composting", but permits any use related to the tilling of the land or the raising of farm products. CLOUT argues that the manufacture of compost in a factory for use off the premises is not an agricultural use but an industrial use, not permitted in an agricultural district, but allowed in the industrial district, permitted under Section 504.1 of the ordinance as "[a]ny manufacturing use including primary production from raw materials."

The appellant relies primarily on *Gaspari v. Muhlenberg Township Board of Adjustment*, 392 Pa. 7, 139 A.2d 544 (1958). In *Gaspari*, the court held that a mushroom farmer who made and used a compost instead of horse manure to raise his mushrooms was still engaged in farming and not manufacturing.

Similarly, the case of *Hempfield Township v. Hapchuk*, 153 Pa.Commonwealth Ct. 173,

620 A.2d 668 (1993) *petition for allowance of appeal denied*, 537 Pa. 643, 644 A.2d 165 (1994), also cited by the appellant, holds that a farmer who uses sewage sludge as a fertilizer on his land is engaged in a farming operation.

We find that the appellant's reliance on *Gaspari* and *Hapchuk* is inapposite. None of the compost to be made by appellant would be a product of its land and none of the compost would be applied by appellant to fertilize and condition its land. Under the broad interpretation espoused by appellant, a sewage treatment plant selling sewage sludge to farmers would be a permitted use in the agricultural district as an activity related to the tilling of the soil. The manufacturers of pesticides, herbicides and farm tractors are also engaged in activities broadly related to farming. But it would be anomalous to classify a factory of the Dupont Corporation engaged in the manufacture of a pesticide or a factory of International Harvester producing farm tractors as an agricultural rather than an industrial use under the terms of this ordinance. Furthermore, if the framers of this ordinance intended such an expansive interpretation, it is clearly redundant to have specified in Section 501.2 that the sale of farm implements are authorized only as a special exception. We hold that the proposed composting facility is not a permitted use within the agricultural district under Section 501.1 of the ordinance.

■ Next, appellant contends that substantial evidence does support the ZHB's findings that a compost facility is similar to the two applicable specific exceptions under Section 501.2 of the Ordinance. In arguing that the trial court erred when it reversed the decision of the ZHB, appellant reminds us of the broad interpretation of zoning ordinances which must be afforded so as to give landowners the least restrictive use and enjoyment of the land. Furthermore, the great weight given to the interpretation of regulatory provisions by the administrative body entrusted to administer those provisions is also emphasized.

■ While we agree with these broad statements of the law, like the trial court, our

review of the record reveals no evidence from which one could conclude that a compost facility is similar in use to that of a "sawmill," such that the exception provided by Section 501.2(5) would be applicable. CLOUT points out that unlike some other sections of the ordinance, the "Sawmills" use listed in 501.2(5) is not prefaced with the words "similar to" or followed by "other similar uses." Rather, it stands alone with little capacity for an expansion of its meaning. We agree, and believe that it is inconceivable that this term may be stretched to encompass the type of facility described by appellant's own witnesses.

As mentioned previously, the vast majority of evidence put forward before the ZHB by appellant concerned attempts to prove the similarities between composting and a permitted agricultural use of the land. Therefore, much of appellant's expert testimony and case law within the record is irrelevant or unrelated to proving that a compost facility fits within the special exceptions under Section 501.2.

■ Reviewing the language of Section 501.2(13) of the ordinance [6] and evidence from the record explaining the nature and scope of the compost facility proposed, we agree with the trial court's determination that substantial evidence does not exist to support the one ZHB member's determination that this facility would be akin to a resource use of the land.

Other than the final use of compost, no evidence exists demonstrating how the facility will make actual use of the land in a manner consistent with, or similar to, the examples described within Section 501.2(13). Appellant's own experts describe the process in which one hundred percent outside sources of material are processed in a totally encompassed facility located on a concrete pad having no connection or utilization of the land itself. (R.R. 19a, 117a.) The imported materials are to consist of leaves, yard waste, grass clippings, hedge trimmings, Christmas trees, brush, pallets, commercial organics (food processing waste) and municipal bio-solids. (R.R. 111a.) Approximately one-third of the materials to be processed at the site are to be the municipal bio-solids, which are treated human sewage sludge. (R.R. 50a, 117a.) One hundred percent of the final product produced at the site will then be shipped off-site for use elsewhere. *Id.* No evidence exists demonstrating how this type of facility is similar to "excavating, quarrying, mining, and the processing of topsoil, sand, gravel, clay, shale, or other natural formation." § 501.2(13). The record contains no evidence that topsoil or any of these other materials is used in the above-described process.

Finally, appellant presents *Brunner v. Zoning Hearing Board of Upper Makefield Township,* 12 Pa.Commonwealth Ct. 109, 315 A.2d 359 (1974), for the proposition that a specific use need not be explicitly mentioned in order for the ZHB to make a determination that it fits within the ambit of a particular land use category. In *Brunner,* the landowner succeeded in convincing a zoning board that his proposed heliport fit within an exception allowing for the construction of an airport. Not troubled by the lack of a definition within the ordinance which would include an allowance of helicopters, this Court relied on common usage, dictionary definitions and statutory construction to conclude that the zoning board had not erred in extending this exception to cover a heliport.

However, even after applying the common usage analogy of *Brunner,* and giving the ZHB the deference it is due, we are unable to conclude that a compost facility, as it is described here, fits within the natural resource use set out in Section 501.2(13) of the ordinance. The words excavate, quarry or mine all relate to the digging, exposing and harvesting of material originally located upon the land itself. While "processing" may connote something not directly related to the land, this term modifies five geological terms directly followed by the phrase "or other natural formation." Remembering that this facility was to be completely contained within a structure with no connection to the land and, in the absence of any evidence within the record demonstrating how this use is similar to a natural resource use of the land,

6. *See* n. 2.

we believe the trial court correctly reversed the decision of the ZHB.

Accordingly, the decision of the trial court is affirmed.

### ORDER

NOW, March 31, 1995, the order of the Court of Common Pleas of Clinton County, in the above-captioned matter, is hereby affirmed.