## Gray v. Zoning Hearing Board

*Michael J. Piosa* and *Worth & O'Hara,* for appellants.

*William E. Schantz,* of *Snyder, Doll & Schantz,* for applicant.

*James G. Kellar,* for Zoning Hearing Board.

DAVISON, *J.,* February 18, 1975.—This is an appeal from a decision of the Zoning Hearing Board of South Whitehall Township ("board") granting a special exception to Alvoy Corporation for the erection of garden-type apartments in an R-3 residence district, South Whitehall Township, Lehigh County, Pa.

Sketch plans for subdivision approval were first presented to the Planning Commission of South Whitehall Township ("planning commission") on April 3, 1972, and, at the behest of the planning commission, were revised and resubmitted on June 5, 1972, and again on July 3, 1972. On November 28, 1972, the Board of Commissioners of South Whitehall Township ("commissioners") denied approval of the preliminary plans. An appeal was taken therefrom to this court which, on December 28, 1973, in a decision

authorized by our colleague, President Judge Kenneth H. Koch, reversed the commissioners: Bee Jay Company v. South Whitehall Township (No. 607, January term, 1973). Among the three reasons which the commissioners announced for rejecting the plan included what they deemed to be the developer's inability ". . . to supply the needed amounts of water to insure the health, safety and welfare of the occupants of the development." While not controlling on the issue presently before us, we believe that the following language of Judge Koch is germane:

"Surprisingly enough, the Township itself intended to expand its own water system to this area. This was indicated in correspondence between the parties which is part of the record before us. Moreover, this issue is no longer of significance in that appellant received approval from the P.U.C. This is an area where the Board could have granted tentative approval to the plan subject to the specified condition that the landowner obtain the adequate water supply pursuant to 53 P.S. § 10709(a)2 which provides: 'Grant tentative approval subject to specified conditions not included in the development plan as submitted.'

"We conclude that the Board of Commissioners of South Whitehall Township, in denying approval of appellant's plan, abused its discretion."

Meanwhile the application for a zoning permit was referred to the planning commission which, on May 6, 1974, approved the proposed development subject to three conditions, namely: (1) that the water system provide water flows of 500 gallons per minute for three hours; (2) that the water system meet township standards as to pipe sizes and related matters, and (3) that the approval of the board be obtained for the project. Following hearings on July 16, 1974, September 18, 1974, and September 19, 1974, during

which testimony was presented on behalf of the application as well as in opposition thereto by neighboring property owners and one of the commissioners, the board granted the request. A timely appeal was thereafter filed by various objectors to this court, briefs prepared and oral argument held thereon on January 21, 1975.[1]

As we recently observed in Burnet v. Zoning Hearing Board, 35 Lehigh 474, 475 (1974):

"As no additional evidence was presented to the court, the scope of our review is limited to whether the Board committed abuse of discretion or error of law. Cleaver v. Board of Adjustment, 414 Pa. 367, 200 A. 2d 408 (1964); Bidwell v. Zoning Board of Adjustment of Pittsburgh, 4 Pa. Commonwealth Ct. 327, 286 A. 2d 471 (1972). It is not within our province to make an independent review of the record and render a decision as to the propriety of a zoning decision because to do so would be to assume the role assigned to the Board. See Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. [805], 53 P.S. §10908(9); Lando v. Springettsbury Tp. Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 312, 286 A. 2d 924 (1972); Nicholas Cihylik et al. v. Zoning Board of North Whitehall Township, No. 146 June Term, 1971, Court of Common Pleas of Lehigh County (1973); Howarth Appeal, 52 D. & C. 2d 615 (1971)."

Appellee seeks to erect ten garden-type apartment buildings containing 22 apartment units in each building with amenities, including a community build-

---

1. While the commissioners were represented by counsel before the board, the only appearances, briefs and argument presented to this court were by counsel for the board (specially retained), the applicant and neighboring property owners.

ing, off-street parking areas, a swimming pool, tennis courts, and other recreational and open space areas. Although the tract contains 23.826 acres, the apartment buildings themselves will occupy 1.62 acres of land or only eight percent of the net land area. Density is 10.666 apartment units per net acre. The board found that all setback requirements of the zoning ordinance will be met by the construction of 2-½ story buildings not exceeding 30 feet in height from ground level. The board further found that plans showing proposed landscaping, sidewalks and curbing, surface water draining facilities and streets for the proposed project were submitted to and approved by the planning commission and the engineer specially engaged by the township to review the planned development.

Appellants claim that the board abused its discretion and/or committed an error of law in granting the special exception (1) without insisting on what they view as certain mandatory requirements of section 1001(d) of the township zoning ordinance, and (2) in concluding that the project would not adversely affect the health, safety, or morals of the community.

With respect to appellants' first argument, it is their position that section 1001 *requires* that the public water supply be *as approved* by the township engineer. It is section 1001 which permits the erection of multi-family dwellings as a special exception in an R-3 residence district where *inter alia:*

"(d) Public sanitation facilities and public water supply are available and utilized as approved by the Township Engineer."

They contend that, since the township's engineer opined that these apartments should have a 200,000-gallon capacity water storage tank, the board's action in granting the exception subject to the developer's

providing only a 15,000-gallon storage tank vitiates the grant. The engineer found the proposed water system adequate in all other respects. Sterling Water Company, a private water company licensed by the Pennsylvania Public Utility Commission, has received permission to provide water to the proposed apartments. This proceeding consumed three days of hearings before the board and was not only the subject of numerous findings of fact, but also extensive discussion in the board's thorough and well-written opinion. The board more than adequately considered and resolved this question in the following manner:

"With respect to the question of the adequacy of the water system to provide adequate fire protection, the Board is also of the opinion that the objectors have failed to carry their burden. The water system exceeds the standards set forth in the Township Subdivision Regulations and there is no indication that any other developer in the Township was even requested or required to provide a system that exceeds those standards. The Township Engineer did indicate that if the pumps at the water company broke down and there were a fire at the same time, the system as proposed would not provide adequate fire protection in those circumstances. Admittedly, there could be a simultaneous occurrence of those two events, but is it likely? And, in any event, should the granting of a special exception be conditioned upon a developer providing a fail safe water system, or sewer system, or any other kind of system? Is the Township's own water system fail safe? Suppose there were a break in a water line in the Township's water system and at the same time there were a serious fire, would the Township's own system provide adequate fire protection in those circumstances? Probably not. But in the opinion of this Board, it is not necessary or advisable to conjure up

every possible combination of events, regardless of how remote, that might occur to render a water system inadequate to afford fire protection in some highly unlikely situation. Reason and experience should rule and reason and experience do not require or permit a fail safe water system. Were it otherwise, it is doubtful that anything would ever be built. Accordingly, since the Planning Commission has suggested, and the Board of Commissioners has required, standards in excess of the Township's own Subdivision Regulations, and since Applicant's water system will meet or exceed these increased standards, this Board is of the opinion that the water system for the proposed project is adequate."

Further, while neither the ordinance nor subdivision regulations define "public water supply" the board's decision implicitly concludes that insofar as zoning is concerned, the matter of water supply is a matter for the board's determination, and not such as is subject to delegation to the prevailing engineer.[2] We do not find the board's action unreasonable in determining that the board, not the engineer, is the final arbiter with respect to whether or not the requirements of the zoning ordinance relating to the matter of public water supply have been met. As this court said in Hunsicker et al. v. Zoning Hearing Board of the City of Allentown (No. 487, January term, 1972):

"Our inquiry is limited to a determination of whether the Board on the record made before that

2. For the board to have rules as appellants urge absent clearly defined standards and safeguards would, as counsel for the intervenor and appellee correctly argue, have raised serious constitutional questions. See: Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A. 2d 587 (1957); Commonwealth v. Cherney, 454 Pa. 285, 312 A. 2d 38 (1973); and 8 McQuillen, Municipal Corporations (3rd ed., 1973), §25.62.

body committed a manifest or flagrant abuse of discretion or error of law and the mere fact that we might have otherwise interpreted the provisions of the ordinance we do not believe is enough to mandate reversal. Pyzdrowski et ux. v. Bd. of Adjustment of City of Pittsburgh, 437 Pa. 481, 263 A. 2d 426 (1970). We do not find that the Board's construction of the meaning of the language of Sec. 2604 is of such a shocking or even unreasonable nature to constitute a manifest or flagrant abuse of discretion or error of law."

The following language of the Supreme Court in Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 182 A. 2d 692, 695 (1962), is pertinent:

"It is fundamental that restrictions imposed by zoning ordinances are in derogation of the common law and must be strictly construed. Rolling Green Golf Case, 374 Pa. 450, 97 A. 2d 523 (1953); Lord Appeal, 368 Pa. 121, 81 A. 2d 533 (1951); and, Medinger Appeal, 377 Pa. 217, 104 A. 2d 118 (1954). Such restrictions must not be so construed as to fetter the use of the land by implication. The permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power."

Finally, it is apparent that the board carefully considered the matter of water for which the subdivision regulations require a water system capable of producing only 250 gallons per minute for a duration of two hours, since the board, as a condition of this grant, requires appellee to provide a water system capable of producing 500 gallons of water per minute for a period of three hours.

We are satisfied, therefore, that the board neither abused its discretion nor committed error of law in concluding that the provisions of section 1001 of the ordinance were met by the appellee. For the same rea-

sons, we find that appellants' contentions with respect to surface water drainage, which were raised during oral argument before the court, although not specifically set forth in their appeal, are likewise without merit.

Turning then to the question of whether or not the board abused its discretion and/or committed an error of law in finding that the proposed use would not adversely affect the community, we begin with the basic proposition that a special exception to a zoning ordinance is a use permitted when the applicant meets the conditions established by the ordinance. In Jones v. Zoning Hearing Board of Lower Merion Township, 7 Pa. Commonwealth Ct. 284, 298 A. 2d 664, 666 (1972), the Court said:

"When one applies for a special exception, he need not affirmatively prove that the proposed use would not adversely affect the health, safety and morals of the community; he need only establish by competent and sufficient evidence that the proposed use falls within the ordinance provisions for special exceptions. Mignatti Con. C., Inc.'s Zoning Application, 3 Pa. Commonwealth Ct. 242, 281 A. 2d 355 (1971); Berlant v. Lower Merion Twp. Zoning Hearing Board, 2 Pa. Commonwealth Ct. 583, 279 A. 2d 400 (1971).

"Protestants to the application bear the burden to prove that a proposed use under a special exception to a zoning ordinance would adversely affect health, safety, or morals of a community. Zoning Hearing Board v. Slavitz, 3 Pa. Commonwealth Ct. 495, 284 A. 2d 337 (1971)."

The board found that, under the prevailing zoning ordinance, the land in question could be utilized in many different ways, a number of which would be far *more* potentially incongruous or presumably incompatible with the neighborhood than the proposed apart-

ments.[3] Not unimportantly, the board observed that these plans call for substantially less than the number of units that are permitted under the provisions of the ordinance. While only 222 units are proposed, 330 are permitted under the ordinance. As the board pointed out, a density of 16 apartment units per net acre is permitted; whereas, only 10.666 units per net acre and 9.234 units per gross acre is proposed. Thus, in many ways, the proposed apartments constitute an underdevelopment in terms of what the ordinance permits. We agree with counsel for the board that the objections raised here are similar to those raised and answered in Zoning Hearing Board of Upper Darby Township v. Konyk, 5 Pa. Commonwealth Ct. 466, 290 A. 2d 715 (1972).

As in many zoning disputes, considerable time and attention was devoted here to the question of potential increase in traffic. The board concluded from the testimony of a traffic expert that the existing street system is more than adequate to handle the contemplated increase in traffic. The following language in Appeal of Manns, 3 Pa. Commonwealth Ct. 242, 281 A. 2d 355, 363 (1971), is significant:

"Where the use applied for is allowable by special exception, it must be contemplated that the use would cause some increase in traffic. However, in order to find that an increase in traffic can justify a denial of a special exception, it must be shown that the increase is of such character as to bear a substantial relation to the health and safety of the community, or a high degree of probability that such an increase would ad-

---

3. For example, R-3 permits, as a matter of right, schools, municipal buildings, public parks and playgrounds, public utility facilities (including facilities for the manufacture, transmission, distribution and storage of electric, gas, water and sewer services), semi-detached dwellings and row houses.

versely [a]ffect the health and safety of the community. Archbishop O'Hara's Appeal, supra. Recognizing that the application will result in some increased traffic, noise, dust and other similar inconveniences, that factor alone cannot deny the use contemplated because many of the allowable and contemplated uses within the zoning district obviously contemplate increased traffic and these other noted inconveniences. Rolling Green Golf Club Case, 374 Pa. 450, 97 A. 2d 523 (1953). Of course there are situations where an increase in traffic will justify the refusal of a special exception. However such increase must be of such character as to bear substantial relation to the health and safety of the community. It must be recognized that many of the permitted uses not requiring special exception would have the effect of increase in traffic as well. Sun Oil Co. v. Warminster Township Zoning Board of Adjustment, 15 Bucks Co. L. Rep. 464 (1965). Although there may be an increase in traffic, there must be a high degree of probability of causing a serious detriment to the community. In contemporary society development and progress are likely to bring with them increased traffic, but this, standing alone, is not sufficient to justify [the refusal of] an otherwise lawful use of property. Delaware County Community College Appeal, supra."

The board heard the evidence and, while obviously not unmindful of the concern of the residents, decided that the contemplated increase in traffic is not of such character as to bear a substantial relation to the health and safety of the community. We are not convinced that the board erred or abused its discretion. As the Commonwealth Court recently stated in Lower Southampton Township v. B. P. Oil Corp., 16 Pa. Commonwealth Ct. 108, 329 A. 2d 535 at 540 (1974), an appeal involving a service station, a case where the

testimony was apparently considerably more persuasive:

"There is evidence in the record that this evidently is a hazardous intersection but, after a careful review of the record, we cannot say that the protestants have established by 'a high degree of probability' that the proposed gasoline service station will contribute to the number of future accidents at the intersection or otherwise 'will affect the safety and health of the community'. Archbishop O'Hara's Appeal, supra, 389 Pa., at 53, 54, 131 A. 2d, at 596."

### ORDER

Now, February 18, 1975, it is ordered that the appeal of Richard A. Gray, James R. Thompson and Citizens for Planned Development from the decision of the Zoning Hearing Board of South Whitehall Township be and the same is hereby dismissed and the decision is affirmed.