## Rexrode v. Zoning Hearing Board of North Coventry Twp.

*John E. Good,* for appellant.

*Timothy F. Hennessey,* for North Coventry Township.

*Barry W. Kerchner,* for zoning hearing board.

MELODY, JR., *J.,* June 15, 1984—Donald G. Rexrode (Rexrode) appeals the denial by the Zoning Hearing Board of North Coventry Township (zoning hearing board) of his request for a special exception to use a tract as a special education school. This raises three issues: (1) Does the application propose two principal uses of the property and, if so, does the zoning ordinance prohibit more than one principal use of a single tract; (2) has the applicant met the ordinance's requirements for a special exception; (3) did the objectors show that the proposed use would be detrimental to the health, safety or welfare of the community. As discussed below, we conclude that it was an error to deny the application.

Rexrode owns a 19.74 acre tract near the intersection of Vaughn Road and Route 724, in the R-2 residential district. The application was to use the

property for a school, a use permitted by special exception in the district.[1]

As set forth by Rexrode, the proposed school would accommodate no more than 500 students, with a probable teacher to student ratio of one to 10. The students would fall into two general categories. The first, special education students, as defined by the Pennsylvania Department of Education, include those from age five to 21 who may be mentally retarded, physically handicapped, hearing impaired, visually impaired or emotionally disturbed, to name several of the defined groups. The school would also include those over age 21, of an IQ of no less than 80, who have been institutionalized and are in need of basic learning and earning skills. The aim would be to equip the latter group with sufficient skills to mainstream them into society. Possibly all students would reside at the school and a substantial number may require nursing care or physical therapy which would be provided on the premises. Medication for the students would necessarily be stored at the site. Rexrode was unable to estimate the size of the nursing staff.

Up to four buildings would be constructed on the tract, covering no more than 10 percent of the total acreage. A maximum of 125 parking spaces would

1. The North Coventry Township Zoning Ordinance ("ordinance") provides that any use permitted in an R-1 residential district is allowed in an R-2 residential district. Ordinance, §502.A.1. In an R-1 residential district, §501.A.3 of the ordinance permits:

"Any of the following uses when authorized as a Special Exception:

. . .

b. School; college; hospital; sanitarium; nursing home; place of worship; club or lodge."

be installed, as the ordinance requires one parking space for every four students.

The tract is near Route 724, with access to that highway possible via local roads, exiting onto Route 724 at Vaughn Road. A planner with the Chester County Planning Commission testified that the school, with the maximum 500 students, could be expected to generate 510 vehicle trips each weekday, or 1.02 trips per student per day. An 80 bed nursing home, another use permitted by special exception in the district, would produce a projected 432 vehicle trips, or 5.4 trips per bed per day, according to the planner's testimony. There was evidence that there had been 16 accidents in the past six years at the Vaughn Road, Route 724 intersection. The increase in traffic the school would generate, opined the township police chief, would greatly increase the hazard of the intersection. Local residents objected to the increase in traffic that the school would bring to neighboring roads.

The township police chief testified that the proposed school would overburden the police force, necessitating around the clock patrols. He acknowledged that, in this respect, the impact of the school would be like that of a typical college with dormitories. The police chief also believed that the presence of prescription drugs would create enforcement problems, as it had at a nursing home in a neighboring township.

An appeal was timely taken by Rexrode from the Zoning Hearing Board decision. The North Coventry Township Board of Supervisors (supervisors) intervened in support of the decision of the zoning hearing board. Having taken no further evidence, it is our task to determine whether the denial was an abuse of discretion or error of law. Soble Construc-

tion Co. v. Zoning Hearing Board of East Stroudsburg, 16 Pa. Commw. 599, 329 A.2d 912 (1974).

## PRINCIPAL USE

The first reason stated by the zoning hearing board for denying the application is that it proposed a dual use, i.e., school and nursing care facility, which is prohibited by the ordinance. Rexrode argues that but one principal use is called for and, regardless, the ordinance does not bar more than one principal use on a lot.

As the term "school" is not defined by the ordinance, it must be presumed to have been used in its broadest sense to give the applicant the benefit of the least restrictive use of his property. Gilden Appeal, 406 Pa. 484, 492, 178 A.2d 562 (1962); Burgoon v. Zoning Hearing Board of Charlestown Twp., 2 Pa. Commw. 238, 248, 277 A.2d 837, 843 (1971). Broadly constructing the term, we believe the word "school" as used in the ordinance must include an institution such as Rexrode proposes. The facility will be licensed as a school by the state Department of Education. Some or all of the students may reside on the tract, as they would at a boarding school or college. To accommodate the special needs of its resident pupils, this school would necessarily offer physical therapy and nursing care. We fail to see how these functions can be separated from the educational institution, of which they are, perforce, an integral part. This school may not resemble the average place of learning, but then, its students are, by definition, exceptional. See Gilden Appeal, supra. We thus conclude that the zoning hearing board erred in concluding that the proposal was for a dual use of the property.

In R-1 residential districts:

"A building may be erected, altered, or used, and a lot may be used or occupied for any of the following purposes and no other:

. . .

3. Any of the following uses when authorized as a Special Exception. . ." Ordinance §501.A. Rexrode contends that this language permits more than one principal use of the tract, citing Gilbert v. Montgomery Twp. Zoning Hearing Bd., 58 Pa. Commw. 296, 427 A.2d 776 (1981).

In Gilbert, the zoning hearing board, as here, denied an application for special exception on the basis that the ordinance precluded more than one principal use on a lot. The language of the ordinance in Gilbert is nearly that of the ordinance here. In finding the board erred, the Commonwealth Court stated:

". . . we cannot read *"any* of the following" to mean *"any one* of the following"; the common and ordinary usage of "any" is not so narrow as the township contends. Moreover, absent express limitation, permissive phrases in zoning ordinances are given their broadest meaning, Kopelman v. Zoning Hearing Board of New Kensington, 55 Pa. Commw. 306, 423 A.2d 761 (1980); Brunner v. Upper Makefield Township Zoning Hearing Board, 12 Pa. Commw. 109, 315 A.2d 359 (1974), and any ambiguities are resolved in favor of the landowner. Heck v. Zoning Hearing Board for Harveys Lake Borough, 39 Pa. Commw. 570, 397 A.2d 15 (1979). Gilbert v. Montgomery Twp. Zoning Hearing Bd. supra. 427 A.2d at 780." (Emphasis added.)

The board of supervisors argues that the definition of "lot" in the ordinance expressly limits a lot to one principal use. The definition reads as follows:

"LOT. A parcel of land which is occupied or is to be occupied by one principal building or other structure or use, together with any accessory buildings or other structures or uses customarily incidental to such principal building or other structure or use . . ." Ordinance, §200. The language of section 501.A., standing alone, would undoubtedly permit more than one principal use of the lot, as the language here is identical to that in Gilbert.[2] We must agree with the board of supervisors that the definition of lot contains words of express limitation which were absent in Gilbert. The definition confines the use of a lot to one principal building or one principal use. Accessory buildings and uses, however, are permitted. As we stated earlier, the nursing care to be offered is an integral part of the proposed special education school, broadly interpreting the purposes and functions of a school. Thus, the nursing care is permitted on the lot as a use accessory to the special education school.[3]

## REQUIREMENTS FOR SPECIAL EXCEPTION

When seeking a special exception, it is the applicant's burden to establish that the intended use is one permitted and that the proposal complies with

2. See: Izzo v. Zoning Hearing Board of Willistown Twp., C.P., Chester County, no. 169, November term 1982 (Slip Opinion, December, 1983.)

3. The board of supervisors maintains that Rexrode's proposal is so vague that it is impossible to ascertain whether it is for a school with nursing facilities, a nursing home with some instruction or both. The ordinance does not require that a land development plan be submitted with an application such as Rexrode's. The application sufficiently describes the *use* proposed, explaining how the institution is to be licensed, the characteristics, ages and number of the students and the possible maximum number of buildings and building coverage.

the specific conditions set out in the zoning ordinance governing the grant of a special exception. Bray v. Zoning Board of Adjustment, 48 Pa. Commw. 523, 410 A.2d 909 (1980). When this burden is met, the applicant identifies the proposal as one which the municipal legislative body has determined to be appropriate in the district and presumptively consistent with the health, safety and general welfare of the community. Zoning Hearing Bd. v. Konyk, 5 Pa. Commw. 466, 470-71, 290 A.2d 715, 718 (1972). The board of supervisors here contends that Rexrode failed to show that the proposal complied with the standards set forth in sections 101 and 102 of the ordinance for the grant of a special exception.[4]

The criteria set forth in sections 101 and 102 of the ordinance,[5] are general, non-objective, standards. The burden of persuasion and duty of going forward as to such general standards is on the objectors. Kern v. Zoning Hearing Bd. of Tredyffrin Twp., 68 Pa. Commw. 396, 449 A.2d 781, 783 (1982); Bray v. Zoning Hearing Board of Adjustment, supra. Thus, it was the burden of the objector, not Rexrode, to show that the proposal did not meet the criteria set forth in sections 101 and 102 of the ordinance. Thus the board erred in concluding that Rexrode had failed to meet his burden as to these standards, as the burden was on the objectors, not Rexrode.

---

4. The zoning hearing board found the application was for a school and nursing care facility, the former a use permitted in the district. See, discussion, infra., regarding principal use, wherein we conclude the proposed use is a permitted one.

5. The provisions read as follows:

"Section 101. Purpose. This ordinance is enacted for the purpose of promoting the health, safety, morals, and the general welfare of the township, is in accordance with a compre-

## OBJECTORS' BURDEN

The zoning hearing board concluded the objectors carried their burden of proof. It does not suffice

hensive plan, and is designed to lessen congestion in the roads and highways, to secure safety from fire, panic and other dangers, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue congestion of population, to facilitate the adequate provision of transportation, and to encourage the most appropriate use of land throughout the township.

Section 102. Interpretation. In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the health, safety, morals, and the general welfare of the township. The provisions of this ordinance shall be interpreted, administered and applied in such manner as will facilitate attainment of the following ojectives:

A. Guiding and encouraging the future development of the township in accordance with comprehensive planning of land use and population density that represents the most beneficial and convenient relationships among the residential, commercial, industrial and recreational areas within the township, having regard to their suitability for the various uses appropriate to each of them and their potentiality for such uses, as indicated by topography and soil conditions, existing man-made conditions, and trends in population, in the direction and manner of the use of land and in building development considering such conditions and trends both within the township and with respect to the relation of the township to surrounding areas;

B. Bringing about through proper timing the gradual conformity of land use to the comprehensive plan aforesaid, and minimizing conflicts among the uses of land and buildings;

C. Aiding in bringing about the most beneficial relation between land use and circulation of traffic throughout the township, having particular regard to traffic, and to avoidance of congestion in the streets and the provision of safe and convenient access appropriate to the various land uses;

D. Aiding in providing a guide for public policy and action in the efficient provision of public facilities and services, in the provision of safe and proper sanitary sewage disposal, and other activity relating to land use."

for the objectors to show some adverse effect on the health and safety of the community. Rather, they must show to a high degree of probability that the proposed use will substantially affect the health and safety of the community. Archbishop O'Hara's Appeal, 389 Pa. 35, 54, 131 A.2d 587 (1957).

The bulk of the testimony offered by the objectors concerned the anticipated increase in traffic and effect on local streets.. There was testimony of accidents at the intersection of Vaughn Road and Route 724, of poor visibility at that spot and that the anticipated increase in traffic would exceed the design capacity of local roads and highways. The expert for the board of supervisors, however, testified that his estimate was based upon the increase in traffic an elementary school could be expected to generate. In other words, he estimated the traffic increase would be the same as that to be normally expected of an elementary school, a use permitted by special exception in the district. He similarly testified that an 80 bed nursing home, another use permitted by special exception in the district, would generate nearly as much traffic as the 500 student school Rexrode proposed. This evidence falls short of proving that there is a high degree of probability the school would generate traffic patterns not normally.associated with this type of use. Archbishop O'Hara's Appeal, supra; Kern v. Zoning Hearing Board of Tredyffrin Twp., supra. We thus conclude that the zoning hearing board erred in denying the proposal on the basis of traffic problems it would create, as there was no evidence that the increase was anything but what could be expected from a similar permitted use.

In its decision, the zoning hearing board concludes, without discussion, that the proposed use would be an onerous burden on the township, out of

harmony with the township's development, clearly injurious to the public interest and a significant danger to the health, safety, morals and welfare of the immediate community. The police chief testified that the school would overburden the police force, but stated that this impact would be like that of a typical college with dormitories, a use permitted by special exception. He also believed the presence of prescription drugs would create enforcement problems but, again, he expected the problem to be similar to that caused by a nursing home in an adjacent community. None of this shows an impact any greater than would be expected by other permitted uses.

A real estate agent testified the proposed school would cause property values in the area to decline. As stated in Soble Construction Co. v. Zoning Hearing Board of East Stroudsburg, supra, 16 Pa. Commw. at 607:

"Neither aesthetic reasons nor the conservation of property values nor the stabilization of economic values in a township are, singly, or combined, sufficient to promote the health or the morals or the safety or the general welfare of the township or its inhabitants or property owners, within the meaning of the enabling act, or under the Constitution of Pennsylvania. Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587 (1957); Medinger Appeal, 377 Pa. 217, 104 A.2d 118 (1954); Mignatti Construction Company, Inc.'s Zoning Application, 3 Pa. Commw. 242, 281 A.2d 355 (1971).

The court held in Soble that the objectors cannot sustain their burden of proof "by merely introducing evidence to the effect that property values in the neighborhood may decrease." Soble, supra, 16 Pa. Commw. at 607. Having done no more than this, the objectors here failed to carry their burden of

proof on this point. See, also: Robinson Twp. v. Westinghouse Broadcasting Co., 63 Pa. Commw. 510, 440 A.2d 642, 644 (1981); A. J. Gosek & Assoc. v. Zoning Hearing Bd., 69 Pa. Commw. 38, 450 A.2d 263 (1982). As the objectors failed to sustain their burden, the zoning hearing board erred in denying the application of Rexrode for a special exception.

## ORDER

And now, this June 15, 1984, it is hereby ordered and decreed that the appeal of Donald Rexrode from the decision of the Zoning Hearing Board of North Coventry Township is hereby sustained and the decision of the zoning hearing board is reversed.